Eastern District of Kentucky
**FILED**

APR 2 9 2019

AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

JERRY RAY BELT,                    )
                                   )
        Plaintiff,                 )        Civil No. 0:18-095-HRW
                                   )
v.                                 )
                                   )
NORTHEAST REGIONAL                 )        **MEMORANDUM OPINION**
HEALTH SERVICES                    )        **AND ORDER**
ADMINISTRATOR, et al.,             )
                                   )
        Defendants.

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Jerry Ray Belt is an individual confined at the Federal Medical Center

("FMC")-Lexington in Lexington, Kentucky. Belt was previously incarcerated at

Federal Correctional Institution ("FCI")-Fort Dix in Fort Dix, New Jersey and FCI-

Ashland in Ashland, Kentucky. Proceeding without an attorney, Belt filed a

complaint asserting claims against various prison officials at FCI-Fort Dix and FCI-

Ashland pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388

(1971).

Belt originally filed his complaint in the United States District Court for the

District of New Jersey, *Belt v. Federal Bureau of Prisons, et al.*, Case No. 1:17-cv-

13582-RBK-AMD. However, after concluding that it did not have personal

jurisdiction over the FCI-Ashland Defendants, that Court transferred the claims

1

against those defendants to this judicial district pursuant to 28 U.S.C. § 1406(a), as venue and jurisdiction are appropriate in this district. [D.E. No. 8] The New Jersey District Court then conducted the initial screening of the claims against the remaining FCI-Fort Dix Defendants pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, but did not screen the claims against the FCI-Ashland Defendants. [*Id.*]

Belt's claims transferred to this Court are alleged against the following defendants: 1) Northeast Regional Health Services Administrator; 2) Jose A. Santana (Northeast Regional Administrative Remedy Coordinator); 3) Thomas Smith (Warden, FCI-Ashland); 4) Janisse Bishop (Associate Warden, FCI-Ashland); 4) Mr. Fazenbaker (Unit Manager, FCC/FPC/FCI (Low)); 5) Federal Prison Camp Administrator-Ashland, KY (Unknown); 6) Health Services Administrator, FCC/FPC/FCI-Ashland, KY (Unknown); 7) Chief Psychologist, FCC/FPC/FCI-Ashland, KY (Unknown); 8) Ms. Williams (Staff Psychologist, FCC-Ashland, KY); 9) Staff Psychologist, FCC/FCI-Ashland, KY (Unknown); 10) Tony Dean (Case Manager, FPC-Ashland); 11) S. Reed (Counselor, FCI-Ashland Low); 12) Mr. Patton (Case Manager, FCI-Ashland Low); 13) J. Boggs (Counselor, FCI-Ashland Low); 14) Captain, FCC-Ashland (Unknown); 15) Ms. Boyd (Primary Care Provider, FCI-Ashland Low); 16) Dr. Gomez (Health Services Director, FCC-Ashland); 17) Special Agent-In-Charge, FCC-Ashland (Unknown); 18) Special Investigations Services, FCC-Ashland, Ky., Lieutenant (Unknown).

2

Thus, this Court must conduct a preliminary review of Belt's complaint against these defendants because Belt asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). A complaint is subject to dismissal as "frivolous" where "it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court evaluates Belt's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, the principles requiring generous construction of *pro se* pleadings are not without limits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Wilson v. Lexington Fayette Urban County Government*, No. 07-cv-95-KSF, 2007 WL 1136743 (E.D. Ky. April 16, 2007). A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ.

P. 8. In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

Moreover, although the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, that obligation does not extend so far as to require or permit it to create arguments or claims that the plaintiff has not made. *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation."). Thus, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008) ("Neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format."). The Court is not required to create a claim for the plaintiff, nor to "conjure up unpled allegations." *Moorman v. Herrington*, No. CIV A 4:08-CV-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009)(citations omitted).

Before addressing the specifics of Belt's allegations, the Court first notes a few general principals applicable to Belt's claims. First, Belt seeks to pursue his

4

claims pursuant to *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights." *Bivens* 403 U.S. at 397. However, to the extent that Belt seeks to sue the defendants in their official capacities, his claims fail. A suit against a government employee in his or her "official capacity" is not a suit against the employee for his or her conduct while performing job duties for the government but is instead a suit against the government agency that employs the individual. Thus, an official capacity suit against an employee of the Bureau of Prisons ("BOP") is a suit against the BOP, which is a federal agency. While *Bivens* authorizes suits against federal employees for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003).

Moreover, while *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Iqbal*, 556 U.S. at 676-677. *See also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017). Thus, in order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-*

5

*Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts…and indicate what each defendant did to violate his rights…" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Thus, to proceed with each of his *Bivens* claims against each defendant, Belt must: 1) allege the violation of a constitutional right; 2) link his allegations to material facts; and 3) indicate what each individual defendant against whom he asserts a particular claim did to violate his constitutional rights.

## I.

Belt's complaint is rambling, disjointed, repetitive and, as originally filed, brings claims against 38 different officials from two BOP facilities in different states. In addition, many of the claims are against unknown defendants and consist of formulaic legal conclusions rather than specific factual allegations giving rise to a legal claim. Thus, ascertaining the claims Belt seeks to bring in this Court, the defendants against whom he seeks to bring those claims, and the factual allegations supporting each claim, presents a challenge.

However, Belt's complaint is essentially broken up into two sections. The first section provides the general factual background giving rise to his complaint, including Belt's alleged history of trauma (including sexual, mental, and physical

6

abuses "from infancy through puberty" [D.E. No. 1 at p. 12]), his allegations of sexual assault by counselor G. Ruffin while Belt was incarcerated at FCI-Fort Dix,[1] and his claims that, since being transferred to FCC-Ashland, the assignment of his security-level designation is improper. [D.E. No. 1 at p. 11-12] The remainder of his complaint lists each individual defendant against whom he seeks to assert a claim and alleges (generally in broad, conclusory language) the claims he seeks to assert against each defendant. [*Id.* at p. 12-19]

From what the Court is able to ascertain, with respect to the claims transferred to this Court by the District Court in New Jersey, Belt alleges the following claims against the following defendants: 1) Defendant Jose A. Santana, identified as the Chief of the Designation, Sentencing and Computation Center ("DSCC") has "neglected his obligations of oversight regarding reviewing Belt's current custody security classification status," resulting in Belt being housed "at a mismatched and inappropriate custody-level with inmates who are convicted sexual predators, causing mental and physical anguish," and has also neglected his obligations "to investigate unwarranty malicious fabrications to approve current increased custody level," and has remained indifferent to appeals of family members to investigate

---

[1] As this alleged assault occurred in New Jersey, the District Court of New Jersey retained jurisdiction over Belt's claims related to the alleged assault and these claims were not transferred to this Court. [D.E. No. 8]

FCC-Ashland's Unit Team's malfeasance regarding the mismatched custody assignment [D.E. No. 1 at p. 13]; 2) authorities at FCC-Ashland, in complicity with Santana, have violated 18 U.S.C. §§ 3621, 4042, and 4081, and the Central and Regional BOP authorities' oversight and enforcement obligations are being neglected [*Id.* at p. 12]; 3) Belt has been inappropriately assigned a security-level custody increase and housed in the Special Housing Unit ("SHU") due to his legitimate health complaints [*Id.* at p. 12]; 4) FCC-Ashland Health Services have been indifferent and neglected to provide treatment required as a result of previous sexual abuse of Belt, as well as Belt's "current serious health complications which are abnormal" [*Id.* at p. 13, 17-18]; 5) Warden Thomas Smith has inadequately responded to reports that Belt has been retaliated against by subordinate staff at FCC-Ashland [*Id.* at p. 16]; 6) Belt has been exposed to second-hand tobacco smoke in an institution "infested with vermin, roaches and other known and unknown pests," as well as "infestations of black-mold, lead paint-based, asbestos contaminated areas" [*Id.* at p. 19-20]; 7) health services employees have "knowingly, intentionally, deliberately, and willfully, denied Belt warranted treatment for both mental and physical conditions" [*Id.* at p. 17, 18]; 8) an unknown lieutenant at FCC-Ashland "implicitly threatened" Belt during his investigation of Belt's claim that he was sexually assaulted by an employee at FCI-Fort Dix [*Id.* at p.19]; 9) Belt has been denied access to the administrative remedy process by Counselors S. Reed and J.

8

Boggs [*Id.* at p. 18]; and 10) Belt has been denied access to uncontaminated drinking water [*Id.* at p. 19-20].

Thus, Belt's claims may broadly be grouped into the following categories: 1) claims based on Belt's prisoner security classification, including his claim that he was classified improperly in retaliation for filing grievances; 2) claims of deliberate indifference to Belt's serious medical needs; 3) claims of hazardous prison conditions; 4) claims of denial of access to the administrative remedy process; and 5) a claim of "implicit threats" during the investigation of his sexual assault claim.

## A. Claims Regarding Belt's Security Classification at FCI-Ashland

In his complaint, Belt alleges claims based upon his security classification at FCI-Ashland (which he claims was improper) against a variety of prison officials.[2] Specifically, Belt alleges that he has been inappropriately assigned a "Greater Security – Management Variable," which represents a security-level custody increase, based upon officials' "mendaciously manufacturing false pretense in documentation," and has resulted in Belt's being housed "at a mismatched and inappropriate custody-level with inmates who are convicted sexual predators,

---

[2] Belt seeks to pursue the claims related to his prisoner classification against the following defendants: DSCC Chief Santana, Warden Smith, Associate Warden Bishop, Unit Manager Mr. Fazenbaker, Unknown FPC Administrator in Ashland, KY, Case Manager Tony Dean, Case Manager Mr. Patton, Unknown Captain at FCC-Ashland, Director of Health Services Dr. Gomez, and an Unknown Special Investigations Services Lieutenant.

causing mental and physical anguish." [*Id.* at p. 12-13, 17-18] He further alleges

that authorities at FCC-Ashland, in complicity with Santana (Chief of the DSCC),

have violated 18 U.S.C. §§ 3621, 4042, and 4081 and have been generally indifferent

to the requests made by Belt and his family members to investigate. [*Id.* at p. 12-

13] He also alleges that he has been inappropriately housed in the Special Housing

Unit ("SHU") due to his legitimate health complaints, suggesting a retaliation claim.

[*Id.* at p. 12]

However, although Belt cites to several statutes regarding the general

authority of the BOP with respect to prisoner classification and/or management of

federal prisons,[3] Belt does not cite to any particular provision of these statutes that

he claims have been violated, nor does he allege facts to explain how his security

classification violates any of these statutes.

In addition, although Belt broadly claims that his security classification and/or

placement in the SHU violates his rights under the Fifth and Eighth Amendments

---

[3] *See* 18 U.S.C. § 3621 (generally providing the factors to be considered by the BOP when designating the place of a prisoner's imprisonment); 18 U.S.C. § 4042 (describing the duties and obligations of the BOP with respect to the management and regulation of Federal penal and correctional institutions); 18 U.S.C. § 4081 ("The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.").

[D.E. No. 1 at p. 11], he fails to allege any facts explaining how any individual defendant violated these rights. Rather, Belt's complaint consists of repeated conclusory allegations of "indifference," "negligence," "malfeasance" and the like, which is insufficient to adequately articulate a claim for relief. *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements.").

Even so, "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate." *Tapia v. United States*, 564 U.S. 319, 331 (2011)(citing 18 U.S.C. §§ 3621(b), (e), (f); 3624(f); 28 C.F.R. pt. 544 (2010)). An inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983), or classified at any particular security level, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484-86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("... the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)

("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs in the federal system], 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003). Indeed, the BOP's decisions regarding where to house a particular inmate pursuant to 18 U.S.C. § 3621(b) are expressly insulated from judicial review under the Administrative Procedure Act ("APA"). 18 U.S.C. § 3625.

Nor does Belt allege facts sufficient to state a claim that his placement in the SHU amounts to cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment "does not mandate comfortable prisons," but only requires prison officials to provide inmates with "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). Belt fails to allege facts suggesting that his placement in administrative segregation, and the resulting minimal intrusion upon the broader freedoms he enjoyed in the general population, deprived him of any of life's necessities sufficient to state a viable claim under the Eighth Amendment. Cf. *Harden-Bey v. Rutter*, 524 F. 3d 789, 795-96 (6th Cir. 2008); *Colgrove v. Williams*, 105 F. App'x 537, 538 (5th Cir. 2004).

Similarly, to the extent that Belt alleges that his placement in the SHU was retaliatory in violation of the First Amendment, he alleges no facts that lend any

12

support to this conclusion whatsoever. To succeed on a retaliation claim, the plaintiff must demonstrate that:

(1) the plaintiff engaged in protected conduct;

(2) the defendant took action against the plaintiff sufficiently adverse to deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct.

*King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). Belt does not allege any facts to support the notion that his classification was motivated by animus occasioned by his health complaints. And mere correlation does not unequivocally imply causation: courts have stressed that while temporal proximity between the protected conduct and the allegedly retaliatory act may provide indirect evidence of the defendant's motive to retaliate, *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004), it is usually coupled by other indicators of intent, such as a history of antagonism between the parties, *Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016), something notably absent here.

In fact, the copy of the Request for Transfer/Application of Management Variable prepared by Tony Dean (Case Manager) and submitted by Belt in support of his complaint indicates that Belt was placed in the SHU for medical observation, and that, although staff had "noticed a pattern of grossly exaggerated physical

13

complaints and symptoms that do not correlate with clinical or diagnostic outcomes, with concerns of malingering," Belt's case "has been closely monitored by Health Services, Psychology, and Unit Team in order to give Mr. Belt the benefit of the doubt and identify any possible clinical or psychological problems that may affect his health as well as functional criteria and safety in a correctional setting." [D.E. No. 1-3 at p. 11][4] The Request Form further states that "[t]he Health Services Department, Psychology, and Unit Team recommend that he be transferred to our Low Security facility, where he can be more closely monitored by staff and where more medical staff are available." [*Id.*] Thus, rather than animus or retaliatory intent, the documents submitted by Belt indicate that Belt's placement in the SHU was actually motivated by the need for medical observation and monitoring.

Belt certainly cannot satisfy the minimum pleading requirements of Fed. R. Civ. P. 8 by merely attaching the word "retaliation" to actions by prison officials with which he disagrees. *Iqbal*, 556 U.S. at 678. This remains true even with the additional latitude afforded to *pro se* litigants. *Scheid*, 859 F.2d at 436 ("More than

_____

[4] Although the sufficiency of the complaint is generally tested with reference only to the face of the complaint itself, *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013), the Court may consider a document attached to the complaint in determining whether dismissal is proper. *Cates v. Crystal Clear Techs., LLC,* 874 F.3d 530, 536 (6th Cir. 2017) (citations omitted). "Further, '[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Id.* (quoting *Williams*, *Williams v. CitiMortgage, Inc.*, 498 F. App'x. 532, 536 (6th Cir. 2012) (per curiam)).

bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.").

In addition, to the extent that Belt's claims are based upon allegations of negligence by the defendants with respect to his security classification and/or placement in the SHU, claims predicated upon the negligence of federal employees acting within the scope of their employment may only be pursued under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq.* ("FTCA"). Belt neither invokes the FTCA in his complaint nor does he name the United States as a defendant, as is required for an FTCA claim. *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir.1990) (the "FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee.") (citing 28 U.S.C. § 2679(a)). Further, the remedy against the United States provided by the FTCA is exclusive with respect to claims that fall within its scope, and thus a plaintiff may not circumvent its exhaustion or limitations provisions merely by pursuing a negligence claim under state law directly against the federal employee in his or her individual capacity. 28 U.S.C. § 2679(b)(1).

Finally, to the extent that Belt alleges that defendants failed to adequately respond to his and/or his family's complaints regarding Belt's security classification, *Bivens* liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004)(citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)). Nor may Belt proceed in a *Bivens* claim against prison administrators (including Chief of the DSCC Santana, Warden Smith, and Associate Warden Bishop) based solely on a theory that, as supervisors, these defendants are responsible for the conduct of his employees. Such a form of sweeping supervisory liability is unavailable in a *Bivens* action: "[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677 (2009). *See also Ziglar*, 137 S.Ct. at 1860.

For all of these reasons, Belt fails to state a claim against any of the defendants based upon his allegations that his security-level assignment was inappropriate and/or regarding his placement in the SHU. Accordingly, these claims will be dismissed.

## B. Claims of Deliberate Indifference to Belt's Serious Medical Needs

Belt refers to his allegedly inadequate and/or denied medical care in his allegations against the following defendants: the Northeast Regional Health Services

16

Administrator,[5] Warden Smith, Associate Warden Bishop, unknown health services administrators at the FCI-Ashland complex, the unknown Chief Psychologist at the FCI-Ashland complex, staff psychologist Ms. Williams, an unknown staff psychologist at the FCI-Ashland complex, counselor S. Reed, Case Manager Patton, Counselor Boggs, primary care provider at Ashland Health Services Department Ms. Boyd, and Health Services Director Dr. Gomez. However, other than generally alleging that he has a past history as a victim of abuse, both in childhood and while he was incarcerated at FCI-Fort Dix, Belt does not allege what treatment, specifically, each defendant is alleged to have denied him. Rather, Belt repeatedly makes broad allegations, such as that various defendants "knowingly, intentionally, deliberately, and willfully, denied Belt warranted treatment for both mental and

---

[5]It appears that Belt's claim against the Northeast Regional Health Services Administrator was transferred to this Court by mistake, as the BOP's Northeast Region includes FCI-Fort Dix but does not include FCI-Ashland. *See* Federal Bureau of Prisons, Locations, available at https://www.bop.gov/locations/list.jsp (last accessed April 10, 2019). Regardless, as the New Jersey District Court found that Belt's complaint failed to state a claim against the Northeast Regional Director and/or the Northeast Regional Administrative Remedy Coordinator for their rejection and/or ignoring of Belt's various administrative remedy complaints, nor did Belt allege sufficient facts indicating that he suffered from a serious medical condition or that prison officials at FCI-Fort Dix acted with deliberate indifference to his serious medical needs, [D.E. 8 at p. 7-10], the Court will decline to transfer this claim back to the New Jersey District Court, as such a transfer would be futile. *See Taylor v. Morrison*, 14 Fed. App'x. 380, 381-82 (6th Cir. 2001)(district court properly dismissed, rather than transferred habeas petition where transfer would "merely result in the [transferee court] being needlessly afflicted with a frivolous habeas petition").

physical conditions which are debilitatingly causing harm and injuries." [D.E. No. 1 at p. 16-18] However, "[l]egal conclusions that are 'masquerading as factual allegations' will not suffice." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 276 (6th Cir.2010) (other citations omitted)). Thus, the lack of factual detail supporting Belt's claims and vague nature of his allegations are sufficient reasons to dismiss his claims for failure to adequately state a claim for relief as required by Federal Rule of Civil Procedure 8. *See Iqbal*, 556 U.S. at 678; *Hill*, 630 F.3d at 470. *See also Twombly,* 550 U.S. at 555; *Grinter*, 532 F. 3d at 577.

Moreover, to the extent that Belt seeks to assert claims against administrative officials, such as the Northeast Regional Health Services Administrator, Warden Smith, Associate Warden Bishop, unknown health services administrators at the FCI-Ashland complex, counselor S. Reed, Case Manager Patton, and Counselor Boggs, in order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo*, 83 F. App'x at 86. The mere fact of supervisory capacity is not enough: respondeat superior is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).

None of these defendants are identified as medical professionals, nor does Belt make any allegation that any of these administrative defendants were directly

and personally involved in making medical decisions regarding Belt's medical care. *See Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003) (plaintiff failed to establish warden's personal involvement in inmate's medical care). To establish that non-medical personnel such as a warden or jailer was deliberately indifferent to an inmate's serious medical needs, the plaintiff must demonstrate that he or she intentionally prevented or interfered with a doctor's course of appropriate treatment, or directly or tacitly authorized the physician's clear mistreatment or neglect of an inmate, none of which is alleged here. *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). *See also Coleman v. Lappin*, No. 6: 10-CV-186-GFVT, 2011 WL 4591092, at *6-7 (E.D. Ky. 2011) (collecting cases).

In addition, to the extent that Belt's claims are based on allegedly inadequate responses to Belt's grievances regarding his medical care, merely responding to a grievance is not a basis to impose liability. *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The denial of the grievance is not the same as the denial of a request to receive medical care.").

For all of these reasons, the Court finds that Belt's allegations that these prison administration officials are insufficient to state constitutional *Bivens* claims against them related to his medical care. At most, Belt alleges that, although he complained

19

to these individuals regarding the inadequate and/or lack of care he alleges he received since his arrival at FCI-Ashland, his pleas were ignored. However, particularly with respect to administrative staff, such allegations are insufficient to establish personal involvement with respect to Belt's claims of deliberate indifference to his serious medical needs.

Belt also seeks to bring claims alleging deliberate indifference to his medical needs against individual medical providers: the unknown Chief Psychologist at the FCI-Ashland complex, staff psychologist Ms. Williams, an unknown staff psychologist at the FCI-Ashland complex, primary care provider at Ashland Health Services Department Ms. Boyd, and Health Services Director Dr. Gomez. Specifically, Belt alleges that: 1) Belt "repeatedly forwarded documentation to" the office of the Chief Psychologist, but this office "has been indifferent and deliberately negligent in appropriately addressing Belt's mental needs," [D.E. No. 1 at p. 17]; 2) in several interviews with Belt, Ms. Williams "has refused treatment and refused to record sessions in which she denies appropriate treatment" [*Id.*]; 3) Belt has "repeatedly complained" to the office of an unknown staff psychologist "and the entire Psychology department currently addressing warranted need for Specialized treatment for both his mental and physical debilitating conditions. Yet Belt continues to be denied appropriate treatment" [*Id.*]; 4) Belt and family members have presented complaints to Ms. Boyd requesting medical treatment, "which with

deliberate, willful, knowing, and intentional neglect is being ignored and denied regarding warranted health treatment needs." [*Id.* at p. 18]; and 5) Dr. Gomez "repeatedly has been directly addressed by Belt in appeals for Specialized treatment in warranted concern for his mental and physical health which to date has been deliberately, willfully, with indifference ignored." [*Id.*][6]

"In order to state a cognizable claim [under the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such a claim involves a two-part inquiry with both an objective and a subjective component: (1) the plaintiff must allege a sufficiently serious medical need, and (2) the plaintiff must allege facts that "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson v. Karnes*, 398

_____

[6] Again, although the basis for Belt's Eighth Amendment claims based on the denial of medical care is not entirely clear due to the vague nature of his allegations, to the extent that he seeks to pursue a claim against any of these individual medical providers under a theory of supervisory liability and/or based upon their respective responses to his grievances or complaints, as previously explained, such claims are unavailable in a *Bivens* action. *See Iqbal*, 556 U.S. at 677 (2009); *Polk County*, 454 U.S. at 325-26 (respondeat superior is not an available theory of liability). *See also Alder*, 73 F. App'x at 841 (merely responding to a grievance is not a basis to impose liability).

F.3d 868, 874 (6th Cir. 2005) (quoting *Comstock v. McCrary*, 273 F.3d 693, 607

(6th Cir. 2001)).

The Sixth Circuit has recognized two theories under which a plaintiff can

satisfy the objective component of an Eighth Amendment deliberate indifference

claim:

> First, if a plaintiff suffered from a minor or non-obvious medical
> condition, he can show that his condition was objectively serious "if it
> is 'one that has been diagnosed by a physician as mandating
> treatment.'" *Blackmore v. Kalamzaoo Cty.*, 390 F.3d 890, 897 (6th Cir.
> 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208
> (1st Cir. 1990)). Second, "where a plaintiff's claims arise from an injury
> or illness 'so obvious that even a layperson would easily recognize the
> necessity for a doctor's attention,'" the plaintiff can meet the objective
> prong by showing "that he actually experienced the need for medical
> treatment, and that the need was not addressed within a reasonable time
> frame." *Id.* at 899–900 (quoting *Gaudreault*, 923 F.2d at 208).

*Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017), *reh'g denied* (Apr. 6, 2017).

*See also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) ("However, if the

need involves minor maladies or non-obvious complaints of a serious need for

medical care…, the inmate must place verifying medical evidence in the record to

establish the detrimental effect of the delay in medical treatment.") (internal

quotations and citations omitted).

Here, the conditions from which Belt claims to suffer are mental impairments,

none of which would be obvious to even a layperson. Specifically, he claims to

suffer from "severe impairment, trauma, and illiteracy [i.e. inability to read and

write], as a consequence of sexual, mental, and physical abuses from infancy through puberty. Also I suffer from trauma episodes of psychogenic impairment, psycho-neurosis, psycho-somatic anxieties, insomnia, as well as severe stuttering." [D.E. No. 1 at p. 12] As evidence of his claimed medical conditions, Belt has attached a 2011 report prepared by Dr. Marc F. Markiewicz diagnosing Belt with chronic posttraumatic stress disorder, depressive disorder, reading disorder and learning disorder. [D.E. No. 1-3 at p. 5] In his 2011 report, Dr. Markiewicz indicates that Belt's prognosis was "fair to good" and recommends that he receive individual mental health counseling one time per week, remedial reading, and rehabilitation counseling to teach him to use prompts and aids in learning. [*Id.*]

It is doubtful that Belt's reading and learning disorders are sufficiently serious to implicate Eighth Amendment concerns. Moreover, Dr. Markiewicz's report diagnosing Belt's mental impairments was prepared approximately eight years ago and does not suggest that Belt's mental conditions were particularly serious or that the treatment suggested was "mandated." [D.E. No. 1-3 at p. 5] Rather, although Dr. Markiewicz diagnosed Belt with posttraumatic stress disorder and depressive disorder (in addition to his reading and learning disorders), he also indicated that Belt's prognosis was "fair to good" and recommended that Belt receive individual mental health counseling once a week, as well as remedial reading and rehabilitation counseling to address his reading and learning disorders. [*Id.*]

However, even assuming that Belt sufficiently alleged that his medical needs were serious enough to implicate constitutional concerns, to establish "deliberate indifference" to Belt's condition, Belt must allege facts sufficient to show that each defendant acted with a knowing and culpable disregard for his well-being, demonstrated by circumstances such as "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Glaringly absent from Belt's complaint are allegations even suggesting that any of these providers were aware of any specific medical condition yet, through his or her actions, chose to consciously and deliberately disregard a serious risk to Belt's health. Rather, Belt alleges that he forwarded "documentation" to the Office of the Chief Psychologist (possibly referring to Dr. Markiewicz's report, although it is not entirely clear) and each of the individual medical provider defendants denied him "appropriate" treatment. [D.E. No. 1 at p. 17-18] However, Belt fails to allege that any *particular* individual defendant denied him medical care with respect to any *particular* medical condition. To be sure, "[p]laintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant," *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted).

24

Moreover, the allegations of the complaint suggest that Belt was receiving treatment for his conditions. For example, his allegations against Ms. Williams, a staff psychologist, refer to Ms. Williams' "interviews" of Belt, as well as their "sessions," both of which suggest that she was meeting with him for evaluation or treatment purposes. [D.E. No. 1 at p. 17] In addition, documentation submitted by Belt in support of his complaint also indicates that Belt was being "closely monitored by Health Services, Psychology, and Unit Team in order to give Mr. Belt the benefit of the doubt and identify any possible clinical or psychological problems that may affect his health as well as functional criteria and safety in a correctional setting." [D.E. No 1-3 at p. 11] Indeed, Belt's repeated allegations that he was not receiving "appropriate" treatment, [D.E. No. 1 at p. 17-18], makes clear that his claim stems from his disagreement with the mental health care that he was being provided. However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the

level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

For all of these reasons, Belt has failed to state a claim for which relief may be granted based on his allegations of inadequate care for his serious mental health needs. Thus, these claims will be dismissed.

## C. Claims Based on Prison Conditions

Belt's complaint seeks to bring claims against "FCI Ashland, KY" based on allegations that FCI-Ashland is "in violations of multifarious health code conditions, regarding the overcrowded warehousing, infestations of black-mold, lead paint-based, asbestos contaminated areas," which he claims has "engender[ed] unsafe, unhealthy and horrendous conditions…causing permanent harm and injuries." [D.E. No. 1 at p. 19]. He further alleges that "BOP persons, staff" are allowed to use and possess "unlawful" tobacco products throughout the institutions facilities, directly causing unspecified harm and injuries to Belt. [*Id.*] He also alleges that "all persons employed by the BOP" have acted "in complicity" to deny Belt safe, healthy, and uncontaminated drinking water. [*Id.* at p. 19-20]

Again, to the extent that Belt's complaint alleges negligence, such a claim may only be pursued under the FTCA, 28 U.S.C. § 2670 *et seq.*, which Belt does not invoke. Moreover, to the extent that Belt seeks to pursue a *Bivens* claim based on prison conditions under the Eighth Amendment, he fails to identify any particular

26

prison official against whom he seeks to assert such a claim. "[T]o prevail under the subjective component [of an Eighth Amendment claim], a prisoner must allege specific incidents of deliberate indifference by prison officials." *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005) (citations omitted). Thus, Belt fails to identify a viable defendant against whom he asserts this claim.

Moreover, Belt's factual allegations, as currently pled, are insufficient to state a claim for an Eighth Amendment violation. The Constitution "does not mandate comfortable prisons," but the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and...'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Wilson*, 501 U.S. 294 (an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the

Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987). To state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer,* 511 U.S. at 837.

Although Belt alleges that there is an "infestation of black-mold, lead paint-based, asbestos contaminated areas," [D.E. No. 1 at p. 19] he provides no further details regarding this allegation. "The mere allegation of the presence of some mold does not create a condition intolerable for prison confinement." *Lyons v. Wickersham,* No. 2:12–CV–14353, 2012 WL 6591581, at *4 (E.D. Mich. Dec.18, 2012). *See also Juliot v. Osborne*, No. 4:14-CV-P1-M, 2014 WL 4259429, at *4 (W.D. Ky. Aug. 27, 2014). Nor does Belt allege any facts suggesting that he has experienced any physical symptoms related to exposure to mold, as required by 42 U.S.C. § 1997e(e),[7] rather he just makes a broad allegation that the prison conditions

---

[7] 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The United States Court of Appeals for the Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg,* No. 2:06–CV–235, 2007 WL 80875, at *3 (W.D. Mich. Jan.8, 2007) (collecting cases). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir.2010).

have caused "permanent harm and injuries" to himself and all other inmates at the institution. [D.E. No. 1 at p. 19]

To the extent that Belt alleges that FCI-Ashland is overcrowded, as "[h]arsh and uncomfortable prison conditions do not automatically create an Eighth Amendment violation..., 'extreme deprivations' must be alleged in order to support a prison-overcrowding claim." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012)(quoting *Hudson,* 503 U.S. at 9). In fact, "overcrowding is not, in itself, a constitutional violation," particularly where, as here, there are no allegations that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation. *Agramonte*, 491 F. App'x at 560 (citations omitted).

In addition, Belt fails to state a claim with regard to exposure to second-hand smoke because he neither alleges that the level of environmental tobacco smoke in the prison created an unreasonable risk of serious damage to his future health, *see Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), nor does he allege that he has a serious medical condition necessitating a smoke-free environment. *See Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992). Nor does Belt allege that any particular defendant was subjectively aware of any risk of harm to Belt as a result of any exposure to ETS and knowingly disregarded that risk.

29

For all of these reasons, Belt has failed to state an Eighth Amendment claim based on his vague and conclusory allegations of harsh prison conditions, thus these claims will be dismissed.

### D. Denial of Access to Prison Grievance Process

In his claims against several defendants, Belt makes allegations such as a defendant "denied facilitation of administrative remedies" [D.E. No. 1 at p. 18 (against Counselor S. Reed)] or that a defendant "[h]as currently denied Belt access to the administrative remedy process." [*Id.* at p. 18 (against Counselor J. Boggs)]. However, Belt fails to allege any further factual details to explain how or when any particular defendant denied him access to the administrative remedy process, thus he fails to adequately allege any personal involvement by any defendant in the alleged deprivation of his federal rights. *See Sampson*, 917 F.3d at 882 ("Even a pro se prisoner must link his allegations to material facts...and indicate what each defendant did to violate his rights."). In addition, "there is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005)(citations omitted). Thus, for both of these reasons, Belt fails to state a viable claim for denial of access to the administrative remedy process.

### E. Claims Against Investigators

Belt alleges that, while he was being interviewed by an unknown Lieutenant in the "Special Investigations Services" at FCI-Ashland regarding the sexual assault that Belt alleges occurred while Belt was housed at FCI-Fort Dix, the lieutenant "implicitly threatened that Belt could suffer continued reprisals and retaliation upon continuing to pursue said complaints." [D.E. No. 1 at p. 19] Belt further alleges that "the neglect and denial of this lieutenant to oblige appropriate PREA protocol is causing increasing injuries and harm." [*Id.*] Belt also seeks to bring a claim against the unknown "Special Agent-in-Charge" at FCC-Ashland, alleging that this agent is responsible for the investigation of all claims concerning PREA violations and is also responsible for the supervision of the unknown lieutenant. [*Id.* at p. 18]

However, to the extent that Belt alleges that the lieutenant "implicitly threatened" Belt, it is well-established that verbal abuse or general harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassment and verbal abuse, while "shameful and utterly unprofessional ... [they] do not constitute the type of infliction of pain that the Eighth Amendment

31

prohibits"); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Thus, the alleged verbal comments to Belt cannot form the basis of a valid Eighth Amendment claim.

Moreover, to the extent that Belt seeks to assert a claim under the PREA (referring to the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*), the PREA "does not create a private cause of action which can be brought by an individual plaintiff." *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014)(collecting cases). *See also Hodge v. Burkhart*, No. 15-CV-105-GFVT, 2016 WL 2986262, at *5 (E.D. Ky. May 20, 2016); *Duncan v. Grief*, No. 5:17-CV-P42-GNS, 2017 WL 3014827, at *4 (W.D. Ky. July 14, 2017). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. 42 U.S.C. § 15601 *et seq*. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug.12, 2008) (quoting *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002)).

Finally, Belt asserts these claims against unknown defendants. However, unnamed defendants, without any identifying description, cannot be parties. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (affirming district court's dismissal of "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute"). While it is true that, in some circumstances, a plaintiff may bring suit against an unnamed "John Doe" defendant until discovery reveals the

identity of the party, *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996), here there is no viable defendant left against whom the litigation may proceed and from whom discovery may be obtained.

For all of these reasons, Belt's complaint fails to state a claim for which relief may be granted and will, therefore, be dismissed without prejudice. Accordingly, **IT IS ORDERED** that:

1. Belt's complaint [D.E. No. 1] is **DISMISSED WITHOUT PREJUDICE**.

2. **JUDGMENT** shall be entered contemporaneously with this Order.

3. This action is **STRICKEN** from the Court's docket.

This ∂7th day of April, 2019.



**Signed By:**
*Henry R. Wilhoit, Jr.*
**United States District Judge**